IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

   Plaintiff,

v.

AMARO-RODRIGUEZ, et al.,

   Defendants.

CRIM. NO. 08-378 (GAG)

**MEMORANDUM OPINION AND ORDER**

Presently before the court is defendant Gerardo Amaro-Rodriguez's motion for reconsideration (Docket No. 210) of the court's January 20, 2010 order denying his motion to supress (Docket No. 187). For the reasons set forth herein, defendant Amaro's motion (Docket No. 210) is **DENIED**.

On January 20th, the court ruled that the search of defendant Amaro's vessel did not violate the Fourth Amendment's protection against unreasonable searches and seizures because it was the product of a maritime border crossing. In his motion for reconsideration, the defendant concedes that a border crossing took place in this case, and that searches pursuant to border searches do not require probable cause or a warrant. He contends, however, that the border search in this case was "nonroutine," requiring a reasonable level of suspicion that criminal activity was afoot. The defendant further argues that reasonable suspicion can only stem from a dog sniff when the canine performing the sniff has been proven to be trained and reliable, which he contends is not the case here. The court will consider each of the defendant's arguments in turn.

It is well-established that border searches are one of the recognized exceptions to the warrant requirement of the Fourth Amendment. United States v. Victoria-Peguero, 920 F.2d 77, 80 (1st Cir. 1990). The Supreme Court has repeatedly stated that "the Fourth Amendment's balance of reasonableness is qualitatively different at the international border than in the interior." United States v. Montoya de Hernández, 473 U.S. 531, 538 (1985); see also United States v. Beras, 183 F.3d 22, 25 (1st Cir. 1999). Thus, it has been held that under the border search exception, the government may conduct routine border stops and searches without probable cause, reasonable

**Crim. No. 08-378 (GAG)**

suspicion or a warrant. United States v. Montoya de Hernández, 473 U.S. at 538; United States v. Thomas, 257 F.Supp.2d 494, 496 (D.P.R.2003).

With respect to nonroutine customs stops and searches, it has been stated that a detention that goes beyond a routine border search and stop needs to be supported by reasonable suspicion of drug smuggling or other wrongdoing. See United States v. Montoya de Hernández, 473 U.S. at 541 ("detention of a traveler at the border, beyond the scope of a routine customs search and inspection, is justified at its inception if customs agents, considering all the facts surrounding the traveler and her trip, reasonably suspect that the traveler is smuggling contraband . . ."). The Supreme Court has not specifically outlined factors that would render a border search nonroutine. The defendant, however, cites to United States v. Braks, 842 F.2d 509 (1st Cir. 1988), where the First Circuit stated that "[t]he degree of invasiveness or intrusiveness associated with any particular type of search determines whether or not that search qualifies as routine." Id. at 511. The Braks Court listed several factors to be considered in assessing the degree of invasiveness:

(i) whether the search results in the exposure of intimate body parts or requires the suspect to disrobe;

(ii) whether physical contact between Customs officials and the suspect occurs during the search;

(iii) whether force is used to effect the search;

(iv) whether the type of search exposes the suspect to pain or danger;

(v) the overall manner in which the search is conducted; and

(vi) whether the suspect's reasonable expectations of privacy, if any, are abrogated by the search;

Id. at 512 (footnotes omitted). Based on these factors, the only searches that have generally been held as nonroutine border searches are the ones that involve strip searches and body cavity searches. Id. at 512-3; United States v. Uricoecha-Casallas, 946 F.2d 162, 166 (1st Cir.1991); United States v. Thomas, 257 F.Supp.2d at 498.

The only factor that the defendant argues is present in this case is the use of force, i.e. drilling into the panel that concealed the cocaine. See United States v. Robles, 45 F.3d 1, 5 (1st Cir. 1995). This use of force, however, came into play only after U.S. Customs and Border Protection agent Joel Graciani perceived the smell of varnish upon entering the vessel for the first time, and thereupon

2

**Crim. No. 08-378 (GAG)**

ordered that a canine sniff be conducted to determine whether there were drugs onboard. Thus, even if the court were to determine that the use of force in this case raises the search of the vessel to the "nonroutine" category, the same would satisfy the reasonable suspicion standard because it was conducted after the canine unit gave a positive indication for the presence of narcotics.

Defendant Amaro also argues that the length of the defendants' detention prior to the canine sniff should be considered in determining whether the search was reasonable. He contends in his motion for reconsideration that if one looks at the pictures that were placed in evidence, the time stamps indicate that the defendants were held for aproximately three hours, on the Puerto Chico pier and in plain view of the public, before the canine unit arrived. The testimony of agent Graciani, however, was to the effect that they waited between an hour and an hour and a half for the canine unit to arrive. Regardless, the defendant cites to United States v. Place, 462 U.S. 696 (1983), where the Supreme Court held that, under Terry v. Ohio, 392 U.S. 1 (1968), the ninety-minute detention of the respondent's luggage to conduct a canine sniff was unreasonable. The Court in Place declined to adopt an outside time limitation for a permissible Terry stop, but concluded that the seizure of respondent's luggage to conduct the canine sniff was unreasonable on the facts presented. In particular, the Supreme Court stated that in assessing the effect of the length of the detention, one should take into account whether the police diligently pursued their investigation. Place, 462 U.S. at 709-10 (noting that the police had ample time to arrange for the narcotics detection dogs to be present a the location before the respondent arrived, but failed to do so).

Applying this standard to the case at hand, the court finds that the agents acted reasonably. This case does not involve a typical Terry stop. The seizure of defendant Amaro's vessel occured as a consequence of a border search, pursuant to 19 U.S.C. § 1581(a),[1] and as such the customs

---

[1] Section 1581(a) of Title 19 of the United States Code reads as follows:

Any officer of the customs may at any time go on board of any vessel or vehicle at any place in the United States or within the customs waters or, as he may be authorized, within a customs-enforcement area established under the Anti-Smuggling

3

**Crim. No. 08-378 (GAG)**

agents had broader authority to hold the defendants pursuant to a search of the vessel than would a police officer in a case such as Place.

Finally, defendant Amaro cites to a First Circuit case, United States v. Race, 529 F.2d 12 (1st Cir. 1976), where the Court took into account the government's ability to lay a strong foundation of canine reliability and handler expertise in finding that the canine alert provided probable cause for the defendant's arrest. Though the defendant points to the fact that in this case the government has not provided the same level of certainty regarding the canine's training, the court here notes that the First Circuit in Race did not set a bright-line rule regarding the documentary evidence necessary for a canine alert to be considered reliable by a court of law. Here, the court found the testimonial evidence provided by agent Jorge Oritz, the dog's handler, sufficiently credible as to the dog's training and as to whether or not an appropriate signal alerting to the presence of narcotics was given. Moreover, contrary to defendant Amaro's contention, the testimonies of agents Graciani and Ortiz were not contradictory, in as much as both testified that the requisite signal (to "sit" or to "lay") was given. Consequently, the court holds that the drill inspection was based on reasonable suspicion and would, therefore, survive the defendant's challenge even under the test for nonroutine border searches.

**SO ORDERED**

In San Juan, Puerto Rico this 8th day of February, 2010.

*S/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge

---

Act [19 U.S.C.A. 1701 et seq.], or at any other authorized place, without as well as within his district, and examine the manifest and other documents and papers and examine, inspect, and search the vessel or vehicle and every part thereof and any person, trunk, package, or cargo on board, and to this end may hail and stop such vessel or vehicle, and use all necessary force to compel compliance.